IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOSHUA L. GILBERTSON,

                Plaintiff,

   v.

FRANK BISIGNANO,[1]

                Defendant.

OPINION and ORDER

25-cv-166-amb

---

Plaintiff Joshua L. Gilbertson seeks review of an Administrative Law Judge's (ALJ) opinion denying his application for Social Security disability benefits.  The ALJ concluded plaintiff could perform several jobs in the national economy and so was not disabled.  In reaching that conclusion, the ALJ gave less weight to a recent exam showing first-percentile scores on certain psychiatric tests as against the weight of the evidence in the record as a whole.  The ALJ also explained how the alleged severity of plaintiff's symptoms related to a traumatic brain injury were not corroborated by or consistent with medical evidence, plaintiff's daily habits and lifestyle, and the ALJ's personal observations during the hearing.  Plaintiff appealed the ALJ's decision to this court after the Social Security Appeals Council denied plaintiff's application for review.  Plaintiff now seeks remand, raising several procedural and substantive issues with the ALJ's opinion.

For the reasons given below, plaintiff's motion for summary judgment seeking remand, Dkt. 11, is DENIED.

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit.

BACKGROUND

Plaintiff filed a claim for supplemental security income in September 2021 alleging disability beginning in August 2008, after being hit by a car while riding his bike.  Dkt. 7 at 22.  His application was denied initially in July 2022 and upon reconsideration in June 2023.  *Id.*  Plaintiff requested a hearing in front of an ALJ, which occurred in May 2024.  *Id.*

In June 2024, the ALJ who presided at the hearing issued an opinion denying plaintiff's application for benefits.  *Id.* at 19.  In so doing, the ALJ made findings under the five-step sequential evaluation process outlined in 20 C.F.R. 404.1520(a).  The ALJ found that plaintiff had severe impairments including remote traumatic brain injury (TBI), headache disorder, seizure disorder, mild neurocognitive disorder, depressive disorder and generalized anxiety disorder. *Id.* at 25.  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. 404 Subpart P, Appendix 1, which would have rendered him disabled as a matter of law.  *Id.*

The ALJ determined plaintiff had the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with restrictions on climbing and working at unprotected heights or using dangerous machinery.  *Id.* at 29.  Further, the ALJ noted that plaintiff could understand, remember and carry out simple instructions consistent with unskilled work that does not involve fast paced production requirements, and could make simple work-related decisions and tolerate only occasional changes in work setting, among other restrictions not relevant to this appeal.  *Id.*

The court will discuss only those aspects of the ALJ's analysis and explanation relevant to this appeal.  In determining plaintiff's RFC, the ALJ discussed his medical history and noted

that plaintiff "has not consistently taken any medication for his depression or anxiety and during the applicable period he repeatedly declined to take any medications for his depression and anxiety," *id.* at 32, citing specific instances as they were relevant to the discussion. *See id.* at 30–35.

The ALJ also discussed the results of numerous medical exams conducted since plaintiff's 2008 accident. Plaintiff often reported feeling nervous, anxious, irritable, and generally depressed. *See id.* However, plaintiff was habitually oriented, well groomed, and engaged during exams. *See id.* Plaintiff underwent several neuropsychological tests since the accident. Often, these exams resulted in low average to low scores in several categories like complex auditory attention, learning or delayed recall, and ability to adapt to changes, though he had stable verbal comprehension, reasoning ability, and memory. *Id.* at 36–37. During a July 2022 exam, the examining doctor found first percentile or lower scores on a list-learning and memory test and a test involving shifting attention. *Id.* at 37.

The ALJ noted that, despite the low-to-low-average findings, plaintiff was "physically active and fully functional," appropriately dressed and groomed with organized and coherent thoughts that, despite being somewhat monotonous, were clear. *Id.* at 38. The ALJ also highlighted plaintiff's normal mood, behavior, thought content, and judgment, and the lack of language deficits or short-term and long-term memory deficits. *Id.*

The ALJ also discussed plaintiff's daily habits and routines, noting that his symptoms did not appear to be significantly limiting him. Among plaintiff's listed activities were playing "a lot of video games" and frisbee golf, doing yard work, cleaning the house, caring for his brother's cat, cooking and baking, and taking a one-off vacation with friends. *Id.* at 39. The ALJ also highlighted plaintiff's capacity to play and enjoy chess and one of his treating doctor's

assessments of him as a "remarkably lively" and "capable player," albeit with apparent impulsivity, single stage planning, and inability to carry out complex maneuvers. *Id.* The record also reflected some work activity after the alleged onset date that the ALJ deemed indicative "that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported."

The ALJ concluded this step by noting that, "even without medication," plaintiff's mental status exams over the long run and the record in its entirety indicate that plaintiff "can understand, remember and carry out simple instructions consistent with unskilled work that does not involve fast paced production requirements and can make simple work related decisions[.]" *Id.* at 42.

Having crafted plaintiff's RFC, the ALJ determined that plaintiff could perform several jobs in the national economy and so was not disabled. *Id.* at 43.

The ALJ denied plaintiff's application in June 2024. Plaintiff appealed the decision, but the Appeals Council denied review in January 2025. *Id.* at 6. Plaintiff sought judicial review from this court under 42 U.S.C. § 405(g) in March 2025. Dkt. 1.

## LEGAL STANDARDS

The Social Security Act, 42 U.S.C. §§ 405(g) & 1382(c)(3), authorizes review of the Commissioner's final decision. Upon review, the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quotation and citation omitted); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (same). If the

reviewing court can understand *how*, given the evidence, the ALJ reached their conclusions, and the conclusion is legally valid, the opinion must be affirmed. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). As such, the court's role is "extremely limited," and it may not reweigh evidence, make credibility determinations, or substitute its judgment for the ALJ's. *Crowell v. Kijakazi*, 72 F.4th 810, 814 (7th Cir. 2023).

Although parties and courts often analogize substantial evidence to a "logical bridge" that an ALJ must construct between the evidence and their conclusions, *see, e.g.*, Dkt. 9 at 14, the Seventh Circuit has cautioned district courts against conflating the metaphor with the standard—"the 'logical bridge' language in our caselaw is descriptive but does not alter the applicable substantial-evidence standard." *Brumbaugh v Saul*, 850 F. App'x 973, 977 (7th Cir. 2021) (citing *Biestek*, 587 U.S. at 99–100). Thus, there may be instances where a conclusion is adequately supported by substantial evidence sufficient for a meaningful review even without a step-by-step explanation of how the ALJ followed the evidence to arrive at the conclusion.

The court will "reverse only if the record 'compels' a contrary result." *Borovsky v. Holder*, 612 F.3d 917, 921 (7th Cir. 2010) (citation omitted). The Supreme Court has emphasized that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103.

ANALYSIS

Plaintiff raises four arguments in seeking remand, which the court addresses in turn below. Plaintiff's arguments raise legitimate concerns about certain aspects of the ALJ's opinion, which was not model. Much of this case comes down to the fact that, on appeal, it is plaintiff's burden to show remand is warranted, which requires more than simply identifying

issues with the ALJ's opinion. *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). Plaintiff fails to carry his burden of showing that his arguments are either supported by law, the evidentiary record, or compel a different conclusion than that which the ALJ reached.

## A.  Misapplication of the paragraph B criteria

Plaintiff argues that the ALJ erred at step three by finding only moderate, as opposed to marked, limitations in his ability to maintain concentration, persistence, or pace (CPP) when considering the paragraph B criteria.  Dkt. 12 at 14–16.  In November 2022, plaintiff underwent rounds of standardized clinical testing for attention and memory, among other things.  Dkt. 7 at 563–64.  Plaintiff scored in the first percentile on an attention-shifting component of one test and a memorization component of a different test. *Id.*  Plaintiff explains that these results were between two and three standard deviations below the mean.  Dkt. 12 at 15–16.  Based on those test findings and other evidence, the ALJ found that plaintiff had moderate limitations in CPP and adapting himself to changes.  Dkt. 7 at 28.  Plaintiff argues that "the ALJ was required to find marked limitations in memory and concentration" at step three, quoting the Social Security Program Operations Manual System (POMS) DI 25225.020.B.1, discussed below.

If an ALJ finds that a claimant has a severe neurocognitive disorder at step two, like plaintiff's TBI here, then at step three, they must consider its effects on four broad areas of functioning to assess whether it satisfies the paragraph B criteria. *See* listing 12.02 of 20 C.F.R. 404, Subpart P, Appendix 1.  If the ALJ finds that a claimant has marked limitations in two of the four domains, the paragraph B criteria are satisfied.  The Social Security Program Operations Manual System (POMS) indicates that a "marked" limitation is one that interferes seriously with one's ability to independently initiate, sustain, or complete activities, and is "the

equivalent of the functioning [the Social Security Administration] would expect to find on standardized testing with scores that are at least tow, but less than three, standard deviations below the mean." POMS DI 25225.020.B.1. The two relevant domains here are the ability to understand, remember, or apply information and the ability to concentrate, persist, or maintain pace (CPP). *See* listing 12.02 of 20 C.F.R. 404, Subpart P, Appendix 1.

Plaintiff's argument is not persuasive for two reasons. First, his insistence that his first percentile scores on his standardized tests command findings of marked limitations is insufficiently supported. Although the POMS does indicate that marked limitations are equivalent to the functioning the administration would *expect* to find on test performances two standard deviations below the mean, the court does not read POMS to *require* finding marked limitations due to such a test score, and plaintiff does not cite any authority to the contrary. The POMS defines marked limitations first and foremost as those that interfere seriously with one's ability to independently initiate, sustain, or complete activities, which was essentially the definition the ALJ offered in their opinion. Dkt. 7 at 27 ("A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis."). With no authority endorsing plaintiff's interpretation of "marked," the court will not read the additional gloss included in the POMS as the definition of "marked." Accordingly, the court rejects that the ALJ committed legal error by failing to find marked limitations in those domains based solely on those data.

Second, even if the ALJ found marked impairments in CPP and adapting to new situations, such a finding would only satisfy one of the two domains required to fulfill the paragraph B criteria. This is because "adapting to new situations" or shifting focus, which the standardized exam tested, is not one of the four broad areas of functioning considered when

assessing whether the paragraph B criteria are met.  As a result, plaintiff would still only have one marked limitation in an applicable category when two are required, so the ALJ's analysis at step three would be unchanged.  Plaintiff himself acknowledges this—"While only one of the four domains would be marked—two would be required to meet or equal this listing . . ." Dkt. 12 at 16.  But plaintiff argues further that the ALJ would still need to account for these marked limitations in his RFC at step four.  *Id.* at 17–18.  True enough, but this continuation of plaintiff's argument is premised on the notion that the ALJ was duty bound to find marked limitations where they found moderate ones—the court has already rejected that argument.

Finally, plaintiff argues that even if the exam results did not command findings of marked limitations, "they certainly indicate areas of markedly impaired function that merit greater consideration and limitations."  *Id.* at 16.  As examples, plaintiff notes that the vocational expert who testified at the hearing indicated that an inability to shift between tasks or requiring one-on-one supervision more than once a day would be work-preclusive.  *Id.*  But plaintiff does not argue that the exam findings necessitate or imply such limitations.  *See id.* Plaintiff's argument on this point is underdeveloped and essentially asks the court to reweigh the impact of the exam results on plaintiff's limitations, which it may not do.

## B.  Improper use of hearing observations

Plaintiff takes issue with two aspects of the observations the ALJ made during the hearing.  Dkt. 12 at 14.

First, plaintiff accuses the ALJ of subjecting him to an impermissible "mental version of the sit and squirm test," towards which the Seventh Circuit has expressed general skepticism. Dkt. 12 at 19 (citing *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000)).  Plaintiff essentially

asks the court to discredit the ALJ's observations of plaintiff based on the Seventh Circuit's disapproval of such evidence.

This argument has several fatal flaws. First, it is not clear what plaintiff means by "a mental version" of the sit and squirm test. The sit and squirm test requires a patient or claimant to sit for longer than they are reportedly able to without experiencing pain so that an examiner can observe the outward indicators of discomfort or pain to assess the veracity or extent of one's reported symptoms. *See Powers*, 207 F.3d at 436. Without the benefit of plaintiff's explanation, the court is unsure how plaintiff's testimony at the hearing amounted to a mental version of such a test.

But in any event, plaintiff's assertion that the Seventh Circuit has "condemned" sit and squirm tests is misleading. The Seventh Circuit in *Powers* expressed doubt as to the "probative value of any evidence that can be so easily manipulated as watching whether someone *acts* like they are in discomfort." *Id.* (emphasis in original). In other words, the court in *Powers* questioned the reliability of such an easily manipulated examination—not the value of observation itself. In fact, the court reaffirmed that it has "repeatedly endorsed the role of observation in determining credibility and refuse to make an exception in this situation." *Id.*

Second, plaintiff questions the accuracy of the ALJ's observations that plaintiff "was able to speak at length about his treatment history and daily activities without any apparent difficulty remembering details or understanding the questions put to him." Dkt. 12 at 19. Plaintiff contends the ALJ's conclusion is factually inaccurate because, during the hearing, plaintiff mistakenly referred to his zip code as his area code and, when asked whether he took his medication on a schedule, replied, "Not a schedule. Likely my schedule with medications is more or less just morning and night." *Id.* at 20 (quoting Dkt. 7 at 78).

9

The Seventh Circuit has said that "hearing officers are in the best position to see and hear the witnesses and assess their forthrightness" and so it "afford[s] their credibility determinations special deference . . . [and] will reverse an ALJ's credibility determination only if the claimant can show it was patently wrong." *Powers*, 207 F.3d at 435 (internal quotation and citation omitted).  The ostensible discrepancies plaintiff identifies are not so contradictory to the ALJ's observations as to render their credibility determination of plaintiff at the hearing patently wrong.   Mistakenly referring to a zip code as an area code is an evidently understandable conflation of two similarly-functioning, short, numeric sequences.  Plaintiff's response to the schedule question is similarly innocuous.  To the court, it appears plaintiff interpreted "schedule" as denoting something more rigorous and precise than simply taking medication in the "morning and night," which could conceivably vary by hours depending on the day of the week.  These quibbles do not render the ALJ's observations patently wrong, and the court will not remand based on this argument.

## C.  Failure to build logical bridge

Plaintiff contends that, due to certain impermissible mischaracterizations or consideration of record evidence, the ALJ failed to support their conclusions with substantial evidence.  Plaintiff presents two discreet issues in this section—(1) the ALJ's reliance on outdated medical exam results "outside of the relevant period" that showed better mental function than his most recent exam, which showed significantly low mental ability scores, and (2) the ALJ's mischaracterization of plaintiff's serial 7's computation test.  Dkt. 12 at 21–22.  The court addresses each in turn.

### 1. Tests outside of the relevant period

Plaintiff takes issue with the ALJ's reliance on certain medical opinions that plaintiff asserts are outside of the relevant period, Dkt. 12 at 21, which began August 22, 2019, Dkt. 7 at 22. The ALJ cited test results from January 2014, September 2017, and March 2018 to support their claim that plaintiff repeatedly tested in the borderline or low-average range. *Id.* at 28. However, a November 2022 test showed plaintiff's "learning trial scores were very low" and "delayed recall was in the mildly impaired range" with "very low" scores. *Id.* at 564. Plaintiff essentially argues that the ALJ overstated plaintiff's abilities by putting more emphasis on the outdated exams than the most recent exams, resulting in conclusions unsupported by substantial evidence. Dkt. 12 at 22.

Plaintiff's argument is framed as a failure to build a logical bridge or, perhaps in addition, an example of the ALJ impermissibly "cherry picking" only the evidence that supports their conclusion to the exclusion of countervailing evidence. *See* Dkt. 12 at 21. It is true that an ALJ may not cite only that evidence that supports their conclusions and must support their conclusions considering all the relevant evidence. *Smith v. Apfel*, 231 F.3d 433, 438 (7th Cir. 2000). And, as always, the ALJ's conclusions must be supported with substantial evidence.

But the ALJ here did not ignore or cherry pick evidence—they contended with the 2022 exam plaintiff highlights but found it unpersuasive and against the weight of the other evidence in the record and in the test itself. Regarding the exam, the ALJ noted plaintiff's severely impaired to below average visual attention processing speed and visual episodic memory scores but also observed that, "when the executive requirement of memory was eased by testing memory in a recognition format, he consistently showed good memory." Dkt. 7 at 36. The test results also showed that his naming improved considerably when he was given phonemic

cues. *Id.* at 557. Further, referring to the reviewing doctor's prognosis, the ALJ emphasized that "the more recent increased executive dysfunction appears to be attributed, in substantial part, to untreated/undertreated depression for which the claimant consistently refuses medication." *Id.* at 42 (citing *id.* at 560). And finally, the ALJ found the reviewing doctor's opinion that plaintiff "does not have the cognitive or behavioral regulation skills required" to work unpersuasively at odds with her own findings of "full scale IQ score, average verbal and performance IQ," "and a mental status exam [that] showed good effort with no difficulties with receptive language and fluent, logical and coherent expressive language." In sum, it is clear the ALJ did not ignore these exam results, and plaintiff has not convinced the court that these results compel a different conclusion about his ability to work considering the other record evidence the ALJ offered in support of their conclusion.

Regarding the ALJ's inclusion or reference to older exams, the reviewing doctor noted that several of plaintiff's 2022 abilities were stable and consistent with those he displayed in 2016. *See id.* at 560. Thus, it makes sense that the ALJ included and referred to those older exams in the opinion.

### 2. Serial 7's

Plaintiff also criticizes the ALJ's characterization of plaintiff's ability to compute "serial 7's" during his 2022 exam, arguing that the record shows plaintiff was only able to complete one addition from 100 to 107 and one subtraction from 100 to 93, neither of which constitute "serial" computations. *Id.* Plaintiff concludes that remand is warranted given such a large disparity between the record evidence and the conclusions the ALJ drew in their opinion. *Id.*

The court understands plaintiff's argument insofar as a single addition or subtraction of a seven is not in line with what one might expect from a successful "serial" test. However,

plaintiff has not convinced the court that plaintiff's performance on this test and the ALJ's characterization of it are so incongruent that remand is warranted. The examining psychologist himself reported that plaintiff "was able to compute serial 7 additions to 100 accurately to 107, serial 7 subtractions from 100 accurately to 93." Dkt. 7 at 545. Plaintiff does not acknowledge, let alone contend with, the fact that the ALJ simply used the same language as the examining professional in describing the exam results. *See id.* at 37 ("He was able to compute serial 7s").

Plaintiff's argument amounts to little more than "nitpick[ing] the ALJ's order" without satisfying plaintiff's burden of showing that the ALJ's determination was not supported by substantial evidence. *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The court will not remand based on this argument.

## D. Failure to consider alternative reasons for lack of treatment

Plaintiff argues that the ALJ erred by failing to consider potential, alternative reasons that resulted in plaintiff's history of refusing to take prescribed or recommended medication for his depression and anxiety. Dkt. 12 at 23–24. Specifically, plaintiff highlights treatment notes showing plaintiff's "lack of motivation to address issues . . . consistent with depression." Plaintiff cites several cases finding that symptoms of certain mental health issues can be a barrier to treating them and concludes that the ALJ was required to explore and refute that possibility before interpreting plaintiff's spotty compliance with drug-based therapies as a conscious choice. *Id.*

Indeed, SSR 16-3p states that an ALJ should not find an individual's symptoms inconsistent with the evidence on the record based on failure to follow prescribed treatment without considering possible reasons the person may not comply with or seek treatment consistent with the degree of their complaints. However, failing to do so may be harmless error

13

when explicit consideration of the factors would not change the outcome of a case. *Sharbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). This may occur when an ALJ's assessment is supported by substantial evidence that the claimant lacks serious functional limitations despite their lack of or limited treatment. *See Kittleson v. Astrue*, 362 Fed. App'x. 553, 558 (7th Cir. 2010). For example, in *Kittleson*, the ALJ erred by failing to consider the impact of the claimant's lack of health insurance on the level of care she sought. *Id.* The court held that the error was harmless because the ALJ sufficiently supported their conclusion that plaintiff could work on other evidence like her hearing testimony, cooperation with medical examiners, and the lack of significant memory or concentration deficits. *Id.* In that way, the reasons *why* the claimant did not seek more intensive treatments would not have affected the ALJ's conclusions, which rested on other substantial evidence.

Additionally, an ALJ's failure to discuss aspects they should have may be harmless when, on appeal, the claimant fails to explain *how* such a discussion would have led to a different result. *Sharbek*, 390 F.3d at 304. The mere omission of a discussion is not necessarily grounds for remand. *Id.* At the end of the day, "[t]he ALJ need not provide a written evaluation of every piece of evidence but need only 'minimally articulate' his reasoning so as to connect the evidence to his conclusions." *Knox v. Astrue*, 327 F. App'x 652, 657–58 (7th Cir. 2009) (citation omitted).

Plaintiff is correct that the ALJ should have either discussed potential reasons for plaintiff's refusal to take certain medication or otherwise explicitly concluded that plaintiff's decision to not was wholly his own. However, the record shows this error is ultimately harmless. Most importantly, plaintiff's refusal to take certain medication was not essential to the ALJ's conclusion that he could still work. Like in *Kittleson*, the ALJ here supported their

14

determination with substantial evidence of his medical history, daily habits and routines, and the ALJ's personal observations during the hearing. In fact, the ALJ noted plaintiff's sufficient capacity "even without medication," leaving no doubt that the ALJ's conclusions would be unchanged by a more thorough discussion of the reasons plaintiff refused certain meds.

Plaintiff does not explain *how* such a discussion would lead to a different result. *See* Dkt. 12 at 23–24. He argues that courts have recognized that mental health issues "may" prevent a person from agreeing to certain treatment but does not clearly state that it did in his case. *See id.* at 24. Instead, he insists that the mere failure to include a certain discussion is legal error that commands reversal. *Id.* at 23. As the cases cited above prove, that is not true in this context. Moreover, at the hearing, plaintiff stated he "would prefer not to" take medication and was "not a fan of pills in general." Dkt. 7 at 88. Although plaintiff points to one medical exam that noted his "lack of motivation to address issues . . . consistent with depression," this one example does not, as a matter of law, overcome the other evidence of plaintiff refusing medication based on personal distaste.

Ultimately, the ALJ supported their conclusion with substantial evidence. Their omission of a dedicated discussion dispensing with potential reasons plaintiff refused to take certain medicine, in light of the myriad evidence supporting the ALJ's conclusions and without more from plaintiff, does not warrant remand.

## ORDER

IT IS ORDERED that plaintiff Joshua L. Gilbertson's motion for summary judgement, Dkt. 11, is DENIED.

Entered March 30, 2026.

BY THE COURT:

/s/

_____

ANITA MARIE BOOR
Magistrate Judge

16